**UNITED STATES of America, Plaintiff-Appellant,**

v.

**FRESNO UNIFIED SCHOOL DISTRICT, Arnold Finch, Superintendent, John Toomasian, Keith Chun, Robert Arroyo, H. M. Ginsburg, Nancy Richardson, Members of the Board of Education of the Fresno Unified School District, Defendants-Appellees.**

No. 76–2539.

United States Court of Appeals, Ninth Circuit.

March 12, 1979.

Walter W. Barnett, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Robert M. Wash, County Counsel, Thomas J. Riggs (argued), Fresno, Cal., for defendants-appellees.

Before WRIGHT and KILKENNY, Circuit Judges, and GRAY,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

In December 1975 the United States, through the Attorney General, filed a complaint alleging a pattern and practice of discrimination against women by the Fresno Unified School District (School District) in its appointment and promotion procedures for administrative and supervisory positions. The district court dismissed the complaint under Fed.R.Civ.P. 12(b) for lack of jurisdiction and failure to state a claim, holding that the 1972 amendments to the Civil Rights Act of 1964 (Civil Rights Act) § 707, 42 U.S.C. § 2000e–6 (1976), transferred authority to initiate pattern or practice suits against public employers to the Equal Employment Opportunity Commission (EEOC).

The issue here is whether the Attorney General may initiate a pattern or practice suit without a referral from the EEOC. We conclude that he may, and reverse the district court and remand for further proceedings consistent with this opinion.

## I.

## BACKGROUND

Prior to the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (1972 amendments), the EEOC had investigatory and conciliatory functions under the Civil Rights Act, but could not bring suit in its own name. Civil actions based on individual complaints could be brought by the aggrieved party under § 706(e), 42 U.S.C. § 2000e–5(e) (1970), and suits alleging an intentional pattern or practice of employment discrimination could be filed by the Attorney General under § 707, 42 U.S.C. § 2000e–6 (1970). State and local governments and agencies were not covered by the Civil Rights Act.

The 1972 amendments enlarged the scope of the Civil Rights Act to include state and

* Of the Central District of California.

local government employers. 42 U.S.C. § 2000e(a) (1976). The EEOC also received expanded enforcement powers.

Section 706, 42 U.S.C. § 2000e–5 (1976), was amended to provide that, after exhaustion of various notice and conciliation procedures, the EEOC could itself bring civil actions against private employers. Only the Attorney General could bring such actions against a public employer. 42 U.S.C. § 2000e–5(f)(1) (1976).

Section 707, 42 U.S.C. § 2000e–6 (1976), was amended by the addition of three new subsections. Section 707(c) provided:

> Effective two years after March 24, 1972, the functions of the Attorney General under this section [dealing with pattern or practice suits] shall be transferred to the Commission . . . unless the President submits, and neither House of Congress vetoes, a reorganization plan pursuant to chapter 9 of title 5, United States Code, inconsistent with the provisions of this subsection.

Section 707(d) provided that, upon the transfer of functions in 1974, the EEOC was to be substituted for the United States or the Attorney General in all pattern or practice suits commenced prior to the transfer. Section 707(e) provided that, upon enactment of the amendments in 1972, the EEOC would "have authority to investigate and act on a charge of a pattern or practice of discrimination . . . .. All such actions shall be conducted in accordance with the procedures set forth in section 2000e–5 [§ 706] of this title."

On February 23, 1978, the President submitted Reorganization Plan No. 1 of 1978 to Congress. The plan provides in relevant part:

Section 5. *Transfer of public sector 707 functions.*

Any function of the Equal Employment Opportunity Commission concerning initiation of litigation with respect to State or local government, or political subdivisions under section 707 of title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. 2000e–6) and all necessary functions related thereto, including investigations, findings, notice and an opportunity to resolve the matter without contested litigation, are hereby transferred to the Attorney General, to be exercised by him in accordance with procedures consistent with said title VII. The Attorney General is authorized to delegate any function under section 707 of said title VII to any officer or employee of the Department of Justice.

Reorganization Plan at 6–7, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 593, 598.

While resolutions disfavoring the plan were submitted in both houses, the House resolution was defeated and the Senate took no action before expiration of the 60-day period for disapproval specified in 5 U.S.C.A. § 906 (West 1977). This section of the Reorganization Plan became effective on July 1, 1978. Executive Order No. 12,-068, 43 Fed.Reg. 28,971 (1978).

This action was begun after the transfer of functions to the EEOC but prior to the issuance of the Reorganization Plan. After the effective date of the transfer in 1974, there was a question regarding the respective powers of the EEOC and Attorney General to bring pattern and practice suits against public employers.[1] We believe,

---

1. In their opening briefs, written prior to the issuance of the Plan, the parties offered three different interpretations of § 707.

 The government's interpretation is generally consistent with the Reorganization Plan. It maintains that the functions transferred to the EEOC by § 707(c) were only those functions which the Attorney General had prior to the 1972 amendments: pattern and practice authority regarding *private* employers. It asserts that the Attorney General retained authority to initiate pattern or practice suits against *public* employers without prior referral by the EEOC.

 The EEOC offers two alternative interpretations, which it continues to assert despite the Reorganization Plan. Because § 707(e) provides that all pattern or practice actions must be conducted in accordance with the procedural requirements of § 706, the EEOC should initiate such actions against public employers in order to attempt conciliation efforts.

 Only if these efforts fail should the EEOC refer the action to the Attorney General. The alternative interpretation is that the EEOC has had exclusive authority since the transfer of

however, that the Reorganization Plan now makes clear that the Attorney General may bring a pattern or practice suit against such public employers as the School District.

## II.

### THE REORGANIZATION PLAN

A. *Authorization to Issue the Plan.*

The statute authorizing executive reorganizations provides:

A reorganization plan may not provide for, and a reorganization under this chapter may not have the effect of . . . authorizing an agency to exercise a function which is not expressly authorized by law at the time the plan is transmitted to Congress . . . ..

5 U.S.C.A. § 905(a)(4) (West 1977).

The School District contends that the Reorganization Plan is ineffective because the Civil Rights Act as amended in 1972 "did not *expressly* authorize the function that the reorganization plan purports to vest in the Attorney General. To the contrary, the law expressly disallows the Attorney General this function and vests it in the E.E.O.C."

 The School District misconstrues the statute. The clear intent of 5 U.S.C.A. § 905(a)(4) (West 1977) is to prevent the creation by "reorganization" of a function not given by law to *any* agency. The statute specifically states that "[a]ny plan may provide for . . . the transfer of the whole or part of any agency, or of the whole or part of the functions thereof, to the jurisdiction and control of another agency . . . .." 5 U.S.C.A. § 903(a)(1) (West 1977). The Reorganization Plan did not create the power to bring pattern or practice suits, but merely transferred to the Attorney General any authority the EEOC may have assumed in 1974 to bring such suits against public employers.[2]

functions in 1974 to prosecute all pattern or practice cases, even against public employers.
Because we base our decision on the Reorganization Plan, we do not reach the merits of these conflicting interpretations of § 707.

 Even if we were to accept the School District's assertion that the 1972 amendments expressly withdrew from the Attorney General the authority to initiate pattern or practice suits, Congress stated that the transfer of functions to the EEOC would not be effective if "the President submits, and neither House of Congress vetoes, a reorganization plan pursuant to chapter 9 of Title 5, . . . inconsistent with the provisions of this subsection." § 707(c), 42 U.S.C. § 2000e–6(c) (1976). Congress specifically allowed for the issuance of a reorganization plan, such as the one under consideration here, that might change the statutory authorization to bring public employer pattern or practice suits.

B. *Retroactive Application.*

Once we conclude that the Reorganization Plan was properly issued and became effective in July 1978, we must decide whether it can be applied here to litigation that began in 1975.

1. *Legislative History.*

The Attorney General maintains that the legislative history of the Reorganization Plan establishes that it is merely a reaffirmation of, not a change in, his right to initiate pattern and practice suits against public employers.

The Senate Committee Report on the plan stated that the 1972 amendments transferred authority to initiate pattern or practice suits to the EEOC

except where the defendant is a State or Local Government. The Department of Justice was to retain jurisdiction to institute pattern or practice suits under title VII against State and Local Government employers subject to the Civil Rights Act.
However, subsequently the courts held that this residuum to the Justice Depart-

2. The Attorney General disputes that it ever lost its authority to the EEOC to initiate a public employer pattern or practice suit. The legislative history of the Reorganization Plan, discussed *infra,* supports this contention.

ment relating to pattern or practice suits is dependent upon referral by the EEOC after that agency completes the same procedures specified by the Civil Rights Act for processing charges of discrimination in the private sector.

Section 5 of the Reorganization Plan transfers to the Justice Department full authority over the procedures leading to the filing of pattern or practice suits under title VII against State and local governments.

S.Rep.No.750, 95th Cong., 2d Sess. 4 (1978).

The House Committee Report is similar:

In 1972 Congress transferred this authority to bring pattern and practice suits to the Equal Employment Opportunity Commission. At the same time Congress gave to the Attorney General the authority to enforce equal employment practices against state and local government. Since then, however, some confusion has resulted in the courts and elsewhere regarding the Attorney General's right to file pattern and practice suits against such state and local governments.

It is the purpose of Section 5 of the Reorganization Plan to restore the certainty of this authority in the hands of the Attorney General so that he can fully carry out the responsibility in such litigation as Congress intended.

H.R.Rep.No.1069, 95th Cong., 2d Sess. 8 (1978).

■ The legislative history supports the government's argument that the courts have been mistaken in holding that the Attorney General lost independent authority to initiate public sector pattern or practice suits. Although we are aware of the possible difficulties of interpreting the intent of an earlier Congress by reference to the legislative history of subsequent legislation, *see, e. g., International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 354 n.39, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), we think that the congressional reports on the Reorganization Plan are helpful in clarifying the confusing relationship of §§ 706 and 707 caused by the 1972 amendments.

### 2. *Applying the Law in Effect at the Time.*

■ Even if we do not accept the legislative history of the Reorganization Plan as conclusive that the Attorney General never lost his authority to bring a pattern or practice suit against a public employer without a referral from the EEOC, we are governed by the general principle that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). *Accord Cort v. Ash,* 422 U.S. 66, 77, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Lee Pharmaceuticals v. Kreps,* 577 F.2d 610 (9th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 847, 59 L.Ed.2d 40 (1979).

■ There is no clear "direction" in the Reorganization Plan proscribing its retroactive application. In fact, the legislative history indicates the opposite is true. Thus the School District must argue that retroactive application results in "manifest injustice."

The *Bradley* court stated that the considerations "relative to the possible working of an injustice center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." 416 U.S. at 717, 94 S.Ct. at 2019. After applying this analysis framework to the fact situation here, we are unpersuaded that the School District will suffer a manifest injustice by allowing the Attorney General to bring a pattern or practice suit without referral from the EEOC.

In *Bradley,* the Supreme Court permitted a grant of attorney's fees to a group of parents who successfully challenged a school board's plan to desegregate, even though the statute authorizing such fees was not passed until the case was on appeal. The Court indicated that it is less likely to find manifest injustice in applying a new

law to pending cases when the party adversely affected is a "publicly funded governmental entity" such as a school board and the other party is a class whose rights to education have been advanced by the litigation. *Id.* at 718, 94 S.Ct. 2006. This is especially true when the new law deals with an issue of "great national concern." *Id.* at 719, 94 S.Ct. 2006.

The School District attempts to distinguish *Bradley* by pointing out that the party harmed by the retroactive application of a new law there had legal and financial resources superior to the other party. In contrast, the party allegedly harmed here by the application of the Reorganization Plan, the School District, is "overwhelmed" by the power and resources of the United States.

*Bradley* does not set up a "resources test," allowing retroactive application of a new law only when the party adversely affected has legal and financial resources superior to the other party. Despite the apparent disparity in resources between the School District and the United States, the nature and identity of the parties here is much closer to those in *Bradley* than the School District would allow.

Although the School District is not being sued directly by a class whose interest would be advanced by the litigation, the Attorney General represents such a class. Like the law under discussion in *Bradley,* the Reorganization Plan deals with an issue of "great national concern." The plan specifies the agency which the President feels will be most effective in discouraging sex discrimination by pattern or practice suits.

■ The second concern listed in *Bradley* regarding the possibility of working an injustice deals with the nature of the rights affected. This concern is relevant only when application of the new law "would

infringe upon or deprive a person of a right that had matured or become unconditional." 416 U.S. at 720, 94 S.Ct. at 2020. We find no such matured or unconditional right that would be affected by the application of the Reorganization Plan. As long as the School District receives notice of an intended suit and an opportunity to conciliate before the suit is filed, both of which are provided for in the plan, it cannot credibly argue that it has the right to be sued only after referral from the EEOC.[3]

The third concern listed in *Bradley* "stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." 416 U.S. at 720, 94 S.Ct. at 2021. Application of the Reorganization Plan does not change the School District's obligation not to engage in a pattern or practice of discrimination under Civil Rights Act §§ 703, 704, 42 U.S.C. §§ 2000e–2, 2000e–3 (1976), nor does it impose additional burdens. It does specifically affirm the right to "notice [and] an opportunity to be heard." 416 U.S. at 720, 94 S.Ct. at 2021.

We conclude that the application of the Reorganization Plan, even if we assume that the application is retroactive, will not result in manifest injustice to the School District.

### III.

### OTHER CASES

We are aware of *United States v. Board of Education, Garfield Heights,* 581 F.2d 791 (6th Cir. 1978), decided after the effective date of the Reorganization Plan. The court held that the Attorney General does not have independent authority to bring a pattern or practice suit against a public employer without a referral from the EEOC. Although the majority opinion did not mention the Reorganization Plan, refer-

---

**3.** *United States v. Alabama,* 362 U.S. 602, 80 S.Ct. 924, 4 L.Ed.2d 982 (1960) (per curiam), is a specific example of retroactive application of a law conferring the right to sue. The district court had dismissed a complaint against the state under the Civil Rights Act of 1957 on the grounds that the statute did not authorize an

action by the United States against a state. The Supreme Court held that the case was controlled by a statute expressly authorizing such actions, even though the statute was not passed until after the district court's decision and the Fifth Circuit's affirmance.

ence to it in the dissent indicates that the court considered its impact on its decision.

We disagree with the holding of the Sixth Circuit. The *Garfield* court relied in part on the three-judge district court opinion in *United States v. South Carolina*, 445 F.Supp. 1094 (D.S.C.1977), and on its summary affirmance by the Supreme Court, 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978). Neither the district court's decision nor the Supreme Court's affirmance is dispositive of the issue here.[4] Even if we assume the district court was correct in stating that the Attorney General lost the authority under the 1972 amendments to initiate a pattern or practice suit absent an EEOC referral, both its opinion and the Supreme Court's affirmance were issued prior to the effective date of the Reorganization Plan. We have already concluded that the plan may be applied retroactively in this fact situation.

A number of courts have held that the Reorganization Plan either reaffirms the Attorney General's authority to initiate public employer pattern or practice suits or else transfers to him that authority as of the plan's effective date. *United States v. North Carolina*, 587 F.2d 625 (4th Cir. 1978); *United States v. New York*, No. 77–CV–343 (N.D.N.Y. Oct. 19, 1978); *United States v. City of San Francisco*, No. C–77–2884 RFP (N.D.Cal. Sept. 22, 1978); *United States v. Baltimore County*, No. H78–836 (D.Md. July 3, 1978).

IV.

**PREREQUISITES TO THE FILING OF A PATTERN OR PRACTICE SUIT BY THE ATTORNEY GENERAL**

The School District's final argument is that, even if the Reorganization Plan is applied, it is still necessary for the Attorney General to comply with the procedures and administrative safeguards outlined in § 706; and, since he did not do so, the dismissal of the complaint should be upheld.

The Reorganization Plan transferred from the EEOC to the Attorney General all necessary functions related to the initiation of pattern or practice litigation "including investigations, findings, notice and an opportunity to resolve the matter without contested litigation . . ., to be exercised by him in accordance with the procedures consistent with said Title VII." Reorganization Plan § 5, *reprinted in* [1978] U.S.Code Cong. & Admin.News at 598. This language reiterates many of the § 706 procedural prerequisites to litigation and follows from the requirement of § 707(e) that the EEOC was to conduct pattern or practice actions "in accordance with the procedures set forth" in § 706.

The apparent intent of the Reorganization Plan is to incorporate all § 706 requirements applicable to pattern or prac-

---

**4.** In *South Carolina*, the Attorney General and several private parties, allowed to sue as plaintiffs-intervenors, challenged the use of test scores in the certification of state teachers as violative of the 14th Amendment and Title VII of the Civil Rights Act. The district court dismissed the Attorney General's Title VII claim, concluding that he lacked the authority to bring such an action without a referral from the EEOC. The court reached the Title VII claim brought by the private plaintiffs-intervenors, however, and held for the defendants. On January 18, 1978, the Supreme Court affirmed summarily.

The *Garfield* court, while conceding that "the question is not entirely free from doubt," concluded that "the Supreme Court necessarily affirmed the conclusion . . . that referral by the EEOC to the Attorney General is necessary prior to the institution of [pattern or practice] suits." 581 F.2d at 792. We disagree.

The Supreme Court has stated that, " '[w]hen we summarily affirm, without opinion, . . . we affirm the judgment but not necessarily the reasoning by which it was reached.' " *Mandel v. Bradley*, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977), *quoting Fusari v. Steinberg*, 419 U.S. 379, 391–92, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (Burger, C. J., concurring). The conclusion of the district court in *South Carolina* regarding the Attorney General's authority to initiate a pattern or practice suit was unnecessary to its holding on the merits and to the Supreme Court's affirmance. We decline, therefore, to read the summary affirmance as an interpretation of § 707 that precludes the Attorney General from bringing a pattern or practice suit without a referral from the EEOC.

tice suits. Not all procedures listed in § 706, however, are necessarily relevant in pattern or practice litigation.[5] The parties did not address this issue below or on appeal, and its resolution is properly committed to the district court.

The district court also did not reach the question whether the Attorney General had met the necessary procedural requirements prior to filing suit. Thus, absent additional factual findings by the district court, we are unable to answer the ultimate question whether the Attorney General may bring this action against the School District.

### V.

### CONCLUSION

 In light of the Reorganization Plan, we hold that the Attorney General may initiate a pattern or practice suit against the School District without a referral from the EEOC if he has satisfied the procedural requirements of § 706 applicable to such suits. We remand to the district court for a determination of what § 706 requirements are applicable to pattern or practice litigation and whether the Attorney General has met those requirements.

Reversed and remanded. The parties will bear their own costs on this appeal.

---

**5.** Some of the § 706 procedural requirements seem to apply only to individual unlawful employment practices and not to pattern or practice suits.

For example, § 706(e) requires the filing of a charge within 180 days of the alleged unlawful employment practice. Section 707, however, contains no requirement that anyone file a charge. A prima facie pattern or practice suit may be based solely on statistical evidence. *United States v. Ironworkers Local 86,* 443 F.2d

544, 551 (9th Cir. 1971). Further, it takes more than one unlawful practice to constitute a "pattern or practice" of employment discrimination. *See id.* at 552. Thus, there could be no certain date from which the 180-day period would run.

Other parts of § 706 that establish certain time limitations measured from the time a charge is·filed have questionable application to pattern or practice litigation for the same reasons.