UNITED STATES of America, Plaintiff,

v.

The COUNTY OF HAWAII, a Municipal Corporation, the Civil Service Commission of the County of Hawaii, Ernest J. Fergerstrom, Chief, County of Hawaii Police Department, Defendants.

Civ. No. 75–0291.

United States District Court, D. Hawaii.

July 10, 1979.

Cora K. Lum, Asst. U. S. Atty., Walter M. Heen, U. S. Atty., Honolulu, Hawaii, Maimon Schwarzschild, Atty., Dept. of Justice, Washington, D. C., for plaintiff.

Stephen J. Menezes, Deputy Corp. Counsel, Stephen G. Bess, Corp. Counsel, County of Hawaii, Hilo, Hawaii, for defendants.

## DECISION AND ORDER

SAMUEL P. KING, Chief Judge.

This action arises out of the dismissal of Peter C. Aiona, Jr., from the Hawaii County Police Department in June 1972. Aiona joined the police force in August 1969. In April 1972, he was baptized as a member of the Seventh Day Adventist Church. One of the religious obligations of the church members is to observe the Sabbath by abstaining from work between sundown Friday and sundown Saturday. Aiona was allegedly discharged from his employment when he refused to report to assigned work on a Friday night or Saturday.

On August 22, 1975, the United States filed suit against the County of Hawaii, the Civil Service Commission of the County of Hawaii,[1] and Ernest J. Fergerstrom, in his capacity as Chief of the Hawaii County Police Department, alleging that defend-

1. The County of Hawaii maintains and operates the Hawaii County Police Department. The Civil Service Commission of the County of Hawaii is responsible for all matters relating to employment in county agencies, including the police department.

ants have pursued a policy and practice of discriminating against Aiona and other similarly situated police officers because of their religious beliefs[2] in violation of 28 C.F.R. § 42.203[3] and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. (1974). Subject matter jurisdiction is based on 42 U.S.C. § 3766(c)[4] and 28 U.S.C. § 1345.[5] Plaintiff alleges that the County of Hawaii has received funds from the United States Department of Justice, Law Enforcement Assistance Administration (hereinafter LEAA), pursuant to the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 42 U.S.C. §§ 3701, et seq. (1977) (hereinafter Crime Control Act). Plaintiff prays for reinstatement of Aiona and other similarly situated Seventh Day Adventists, accommodation of their religious practices and beliefs in the scheduling of work assignments, back pay, and other appropriate relief.

On April 17, 1979, defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment or Partial Summary Judgment. Defendants base their motion on the grounds that 42 U.S.C. § 3766(c) does not confer subject matter jurisdiction on the court to hear this suit or standing on the Attorney General to bring it; the complaint fails to state a claim upon which relief can be granted because the regulations at 28 C.F.R. §§ 42.201, et seq., as they existed at the time Aiona was dismissed[6] were invalid; and the United States Attorney General lacks standing to sue under Title VII without prior referral to him by the Equal Employment Opportunity Commission.

■ The general grant of jurisdiction under 28 U.S.C. § 1345[7] is sufficient, by itself, to permit this Court to entertain a suit brought by the United States, *Brennan v. Buckeye Industries, Inc.*, 374 F.Supp. 1350 (S.D.Ga.1974),[8] provided that "the United

2. Plaintiff alleges, *inter alia*, that defendants have maintained a policy and practice of refusing to accommodate the religious observances of Aiona and other Seventh Day Adventists in the scheduling of monthly work assignments.

3. *Discrimination prohibited.*
   (a) No person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, be subjected to discrimination under, or denied employment in connection with any program or activity funded in whole or in part with funds made available under the Crime Control Act . . .
   28 C.F.R. § 42.203 (1978).

4. (1) No person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any program or activity funded in whole or in part with funds made available under this chapter.
   Crime Control Act of 1968, § 518(c), as amended, 42 U.S.C. § 3766(c) (1977).
   Subsection (3) authorizes the Attorney General to bring a pattern and practice suit to enforce the provisions of § 3766(c)(1).
   Subsection (4) authorizes an aggrieved individual to sue after exhaustion of administrative remedies and permits the Attorney General to intervene "if he certifies that the action is of

general public importance." *Id.* § 3766(c)(4)(C).

5. *United States as plaintiff.*
   Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.
   28 U.S.C. § 1345 (1976).

6. Equal Employment Opportunity in Federally Assisted Programs and Activities, 35 Fed.Reg. 19998 (1970) (hereinafter 1970 equal employment regulations) (current version at 28 C.F.R. §§ 42.201, et seq. (1978) ).

7. *See* note 5, *supra.*

8. In *Buckeye Industries*, a suit brought by the Secretary of Labor to enforce provisions of the Occupational Safety and Health Act of 1970, the court rejected defendant's argument that the specific provisions of OSHA are the exclusive basis for the court's assertion of subject matter jurisdiction, stating:
   The absence of specific statutory authority for an action by the United States in a particular instance is no obstacle to original jurisdiction under § 1345. It is settled that no such prerequisite exists to the appearance of the United States before its own courts.
   374 F.Supp. at 1352–53 (citations omitted).

States has the capacity and standing to bring [such] a suit." *Clark v. Valeo*, 182 U.S.App.D.C. 21, 38, 559 F.2d 642, 657 (Tamm, J., concurring), *aff'd mem. sub nom. Clark v. Kimmitt*, 431 U.S. 950, 97 S.Ct. 2667, 53 L.Ed.2d 267 (1977).[9] Thus, the threshold question in this case is whether the Crime Control Act confers standing to sue upon the United States through the Attorney General. If it does, there is no question that this Court has subject matter jurisdiction under section 1345, for nothing in the Crime Control Act provides otherwise.

Section 518(c) of the Crime Control Act of 1968, 42 U.S.C. § 3766(c), contains no language expressly conferring standing on the Attorney General to sue on behalf of an individual whose rights under section 518(c)(1) have been violated; but such authorization to sue may be garnered from the general terms of the implementing regulations, which were amended in 1977 to provide that "[t]he Administration may, at any time, request the Attorney General to file suit to enforce compliance with section 518(c)(1)." 42 Fed.Reg. 9,497 at 9,500 (1977) (codified at 28 C.F.R. § 42.217(a) (1978) ). Such a request was made by the Administrator in the present case.[10]

It is defendants' position that section 518(c) does not apply here because the current version was enacted in 1976 after this suit was filed [11] and because prior to 1976, section 518(c) only provided remedies for discrimination based on "race, color, national origin, or sex." [12] Defendants rely on the case of *Watkins v. Mercy Medical Center*, 364 F.Supp. 799 (D. Idaho 1973), *aff'd* 520 F.2d 894 (9th Cir. 1975), where the district court dismissed plaintiff's claim under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, stating, "[a]ssuming that Dr. Watkins was discriminated against on the basis of his religious beliefs, that section speaks only in terms of racial discrimination." 364 F.Supp. at 803.

But this is a different case from *Watkins* because of the amendment of section 518(c) to include remedies for religious discrimination subsequent to the filing of this suit. The question, then, is whether section 518(c) and the present regulations can be applied retroactively to confer standing to sue upon the United States, through its Attorney General.

As a general principle, "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statu-

---

**9.** In *Clark*, the United States relied on *Buckeye Industries* in arguing that it had standing to intervene in a suit independent of both a statutory authorization to sue and an articulated injury to the interest of the federal government. The suit was dismissed on other grounds, but Judge Tamm, in a concurring opinion, addressed the United States' contention, emphasizing that standing is conceptually distinct from the jurisdictional issue raised by section 1345 and discussed in *Buckeye Industries*:

> Section 1345 is not relevant to the separate question of standing of the United States. It is merely a statutory expression of the Congress' constitutional power to define the jurisdiction of the federal courts without which a federal court cannot entertain a suit regardless of how solidly a litigant establishes his standing. If the United States has the capacity and standing to bring a suit, then section 1345 gives the federal courts jurisdiction over that suit.

559 F.2d at 657.

**10.** On December 11, 1972, Aiona filed a complaint with the LEAA alleging that his dis-

charge from the County of Hawaii Police Department constituted religious discrimination in violation of the equal employment regulations. LEAA attempted unsuccessfully to negotiate with county officials to achieve voluntary compliance. On August 4, 1974, the Administrator referred Aiona's case to the United States Department of Justice for appropriate legal action to enforce the regulations. Plaintiff's Supplementary Memorandum in Opposition to Motion to Dismiss, app. (June 25, 1979) (Affidavit of Robert K. Burkhardt, Acting Director of the Office of Civil Rights Compliance of the Law Enforcement Assistance Administration of the United States Department of Justice (June 21, 1979) ).

**11.** Crime Control Act of 1976, Pub.L. No. 94–503, Title I, § 122(b), 90 Stat. 2418 (codified at 42 U.S.C. § 3766(c) (1977)).

**12.** Crime Control Act of 1973, Pub.L. No. 93–83, § 2, 87 Stat. 214 (current version at 42 U.S.C. § 3766(c)(1) (1977)).

tory direction or legislative history to the contrary." *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), *United States v. Fresno Unified School District*, 592 F.2d 1088, 1093 (9th Cir. 1979). A court's considerations "relative to the possible working of an injustice center upon (a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." 416 U.S. at 717, 94 S.Ct. at 2019. In *Fresno Unified School District*, the Court of Appeals for the Ninth Circuit applied the considerations enunciated in *Bradley* in holding that the provisions of an executive order issued after suit was filed could be applied retrospectively to confer standing on the United States Attorney General to sue under Title VII.[13]

▪ A consideration of the factors set forth in *Bradley* and *Fresno* reveals no reason why the general rule regarding retrospective application of existing laws and regulations should not be employed here.

While the 1973 version of section 518(c) was expressly made retroactive to July 1, 1973,[14] no clear statutory direction either proscribing or permitting retroactivity of the current version of section 518(c) appears anywhere in the Crime Control Act of 1976. The legislative history of the 1976 act[15] is equally inconclusive.

Nor does manifest injustice result from retrospective application of section 518(c) and the implementing regulations. The Supreme Court has said that it is less likely that injustice will result where the party adversely affected is a "publicly funded government entity,"[16] and where the other party represents a person whose substantive rights have been advanced by the litigation.[17] "This is especially true when the new law deals with an issue of 'great national concern.'"[18] Here, defendants are publicly funded government entities and the Attorney General represents an individual whose right to nondiscriminatory employment may be advanced by the litigation. Section 518(c) deals with an issue of "great national concern." Plaintiff, by be-

---

13. At the time that the suit was filed in *Fresno Unified School District*, the authority to initiate pattern and practice suits against public employers had been transferred from the Attorney General to the EEOC. *See* 42 U.S.C. § 2000e–6 (1976). Subsequently, the section of the President's Reorganization Plan transferring authority to sue back to the Attorney General was adopted. Exec. Order No. 12,068, 43 Fed.Reg. 28,971 (1978), *reprinted in* 42 U.S.C. § 2000e–6 app., at 567 (Supp. II 1978).

In an earlier case, *Duplex Co. v. Deering*, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349 (1921), the Supreme Court upheld the lower court's retrospective application of the Clayton Act to confer standing on a private party to sue to enjoin violations of the Sherman Antitrust Act. The plaintiff, a private entity, had filed suit prior to the passage of the Clayton Act when private parties had no statutory authorization to sue under the Sherman Act. The court based its determination on the prospective nature of the relief sought, but such reasoning is not controlling here because the parties in this case are public entities. *See* note 16, *infra*.

14. Crime Control Act of 1973, Pub.L. No. 93–83, § 3, 87 Stat. 218.

15. *See* 1976 *U.S.Code Cong. & Admin.News*, p. 5374.

16. *Bradley v. Richmond School Board*, 416 U.S. at 718, 94 S.Ct. 2006, *cited in United States v. Fresno Unified School District*, 592 F.2d at 1094. The court also noted that:

[S]chool desegregation litigation is of a kind different from "mere private cases between individuals." With the Board responsible for the education of the very students who brought suit against it to require that such education comport with constitutional standards, it is not appropriate to view the parties as engaged in a routine private lawsuit. In this litigation the plaintiffs may be recognized as having rendered substantial service both to the Board itself, by bringing it into compliance with its constitutional mandate, and to the community at large by securing for it the benefits assumed to flow from a nondiscriminatory educational system.

416 U.S. at 718, 94 S.Ct. at 2019–2020 (footnote and citation omitted).

17. *See id.* ("In this case the [plaintiffs] consist . . . of . . . a class of children whose constitutional right to nondiscriminatory education has been advanced by this litigation.")

18. *United States v. Fresno Unified School District*, 592 F.2d at 1094 (quoting *Bradley v. Richmond School Board*, 416 U.S. at 719, 94 S.Ct. 2006).

ing permitted to sue under the current statute and regulations and if successful, is rendering "substantial service" both to defendants, by bringing them into compliance with the law, and to "the community at large by securing for it the benefits assumed to flow" [19] from a nondiscriminatory police department.

The second consideration set forth in *Bradley*, dealing with the nature of the rights affected, "is relevant only when application of the new law 'would infringe upon or deprive a person of a right that had matured or become unconditional.'" [20] It is unclear what matured and unconditional right defendants claim here; presumably, the right to rely on the 1973 version of section 518(c) which at the time suit was filed, precluded the legal remedy sought by the Attorney General. No such right exists, for since 1970 and even after the enactment of the 1973 version of section 518(c), the equal employment regulations issued pursuant to the Crime Control Act have expressly prohibited discrimination based on creed [21] and have implicitly authorized the Attorney General to enforce those regulations in court. [22]

A third consideration relative to the working of an injustice "stems from the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley v. Richmond School Board*, 416 U.S. at 720, 94 S.Ct. at 2021. In light of the language of the 1970 equal employment regulations, one can hardly argue that the current version of section 518(c) and its implementing regulations impose new and unanticipated obligations on defendants. Compliance with the 1970 regulations was a contractual element in the grant of LEAA funds to the County of Hawaii, for every application for an LEAA grant had to be accompanied by assurances that the grantee would comply with those regulations. [23]

■ Defendants attempt to escape the effect of the 1970 regulations by arguing that the regulations were issued in excess of the LEAA's authority under section 501 of the Crime Control Act which provides that "[t]he Administration is authorized . . . to establish such rules, regulations, and procedures as are necessary to the exercise of its functions, and are consistent with the stated purpose of this chapter." [24]

---

**19.** 416 U.S. at 718, 94 S.Ct. at 2019.

**20.** *United States v. Fresno Unified School District*, 592 F.2d at 1094 (quoting *Bradley v. Richmond School Board*, 416 U.S. at 720, 94 S.Ct. 2006).

**21.** 35 Fed.Reg. 19,998 (1970) (current version at 28 C.F.R. § 42.203(a) (1978) ).

**22.** *[P]rocedures for effecting compliance, hearings, decisions and judicial review*; . . .
   (a) [W]here the responsible Department official determines that judicial proceedings (as contemplated by § 42.108(d) ) are as likely or more likely to result in compliance than administrative proceedings . . . he shall invoke the judicial remedy rather than the administrative remedy; . . .
35 Fed.Reg. 19,998 (superseded by 42 Fed.Reg. 9,497, at 9,498–99 (1977), codified at 28 C.F.R. § 42.206 (1978) ).
  28 C.F.R. § 42.108(d) (1978) provides:
*Other means authorized by law.* No action to effect compliance by any other means authorized by law shall be taken until (1) the responsible Department official has determined that compliance cannot be secured by

voluntary means, (2) the action has been approved by the Attorney General, and (3) the recipient or other person has been notified of its failure to comply and of the action to be taken to effect compliance.

**23.** 35 Fed.Reg. 19,998 (1970) (current version at 28 C.F.R. § 42.204(a) (1978)).

**24.** 1968 Crime Control Act, Pub.L. No. 90–351, Title I, § 501, 82 Stat. 205 (current version at 42 U.S.C. § 3751 (1977)).

In their Motion to Dismiss, defendants challenge the validity of the 1970 regulations, not in the context of the retroactivity issue, but under the assumption that plaintiff's cause of action is controlled by the 1970 regulations rather than the current version. It is doubtful that defendants would raise a similar challenge to the current regulations at 28 C.F.R. §§ 42.201, *et seq.*, whose express purpose "is to implement the provisions of section 518(c) of the Crime Control Act of 1976, Pub.L. No. 94–503, 90 Stat. 2407." 28 C.F.R. § 42.201(a) (1978).

Regulations issued under a general authorizing statute like section 501 are valid if they are "reasonably related to the purposes of the enabling legislation." *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973) (quoting *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 280–81, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)). "[W]here reasonable minds may differ as to which of several remedial measures should be chosen, courts should defer to the informed experience and judgment of the agency to whom Congress delegated appropriate authority." 411 U.S. at 371–72, 93 S.Ct. at 1662 (citations omitted).

The "declared policy" of the Crime Control Act is "to assist State and local governments in strengthening and improving law enforcement and criminal justice at every level." [25] Section 301(b) of the act, 42 U.S.C. § 3731(b), authorizes the LEAA "to make grants to States having comprehensive State plans approved by it" for, *inter alia,* "[t]he recruiting of law enforcement personnel," *id.,* § 3731(b)(2), and "the recruiting . . . of community service officers . . . [and] improvement of police-community relations." *Id.,* § 3731(b)(6).

The 1970 equal employment regulations are reasonably related to the Crime Control Act's broad purpose of improving law enforcement. The above-quoted provisions of the act indicate that Congress considered the employment of police officers to be relevant to the strengthening of law enforcement.[26] As early as 1967, the President's Commission on Law Enforcement and Administration of Justice had noted the importance of "personnel within a police department [being] representative of the community as a whole." [27] It was within the LEAA's "informed experience and judgment," 411 U.S. at 372, 93 S.Ct. 1652, to choose to foster nondiscriminatory employment policies as a means of achieving a more balanced and effective police force.

Defendants' contention that the Attorney General lacks standing to sue under Title VII is easily disposed of. Plaintiff admits that it states no claim under Title VII and that the complaint refers to Title VII solely for the purpose of emphasizing that the legal standards applicable in Title VII cases are also to be employed in actions brought under the instant Act and regulations.[28]

*Summary* [29]

The Court has subject matter jurisdiction under 28 U.S.C. § 1345.

The current versions of § 518(c) of the Crime Control Act of 1968 and the imple-

---

**25.** 42 U.S.C. § 3701 (1977).

**26.** This case is therefore distinguishable from the case of *NAACP v. FPC,* 425 U.S. 662, 96 S.Ct. 1806, 48 L.Ed.2d 284 (1976), which is relied upon by defendants because the Supreme Court there held that the Federal Power Commission lacked authority under the Federal Power Act and the Natural Gas Act to promulgate regulations prohibiting discriminatory employment practices on the part of regulated utilities where the "principal purpose" of the acts was "to encourage the orderly development of plentiful supplies of electricity and natural gas at reasonable prices." 425 U.S. at 669–70, 96 S.Ct. at 1811. The circuit court had noted that there was little likelihood that employment discrimination by a regulated utility would "work its way" into the provision of services by that utility. 172 U.S.App.D.C. 32, 42, 520 F.2d 432, 443 (1975), *aff'd* 425 U.S. 662, 96 S.Ct. 1806, 48 L.Ed.2d 284.

**27.** President's Commission on Law Enforcement and Administration of Justice (hereinafter President's Commission), Task Force Report: The Police, 167 (1967).

The report was published in the very year that the Crime Control Act was first introduced. The primary concern at that time was the deteriorating relations between police and minority communities and the belief was that those relations could not be improved until the police force contained "a sufficient number of minority-group officers." President's Commission, The Challenge of Crime in a Free Society, 101 (1967).

**28.** "In the area of employment cases brought under [§ 518(c)] it is intended by the conferees that the standards of title VII of the Civil Rights Act of 1964 apply." H.R.Conf.Rep. No. 94–1723, 94th Cong., 2d Sess. 32, *reprinted in* 1976 U.S.Code Cong. & Admin.News, p. 5418.

**29.** Plaintiff should give thought to amending its complaint to conform with the points raised in this decision.

menting regulations at 28 C.F.R. §§ 42.201, *et seq.* (1978), constitute the controlling law in this case.

The Attorney General has standing to sue under 28 C.F.R. § 42.217(a) (1978).

Plaintiff states a valid claim under 28 C.F.R. § 42.203 (1978).

Plaintiff does not state a claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (1974).

IT IS THEREFORE ORDERED that defendants' Motion to Dismiss or in the Alternative for Summary Judgment or Partial Summary Judgment is DENIED.