**ST. FRANCIS HOSPITAL, INC.,**
**Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare,**
**Defendant.**

**Civ. A. No. 78–2484.**

United States District Court,
District of Columbia.

Oct. 31, 1979.

Geoffrey P. Gitner, Washington, D. C., Robert A. Wilmot, Milwaukee, Wis., for plaintiff.

Edith S. Marshall, Sp. Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

*Introduction*

This matter is before the Court on defendant's motion to dismiss, or in the alternative, for summary judgment, and plaintiff's cross-motion for summary judgment. Upon consideration of these motions, the oppositions filed thereto, the oral arguments of counsel, and the entire record herein, the Court concludes that plaintiff has stated a claim upon which relief can be granted, that there are no genuine issues of material fact and that both motions for summary judgment should be denied in part and granted in part.

The plaintiff, a non-profit corporation, is a 248-bed general, short-term hospital. In accordance with an agreement entered into with the Secretary of Health, Education and Welfare (Secretary) under the provisions of 1866 of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, plaintiff hospital was certified as a participating provider under Title XVIII of the Social Security Act, popularly referred to as "the Medicare program".

At all times material hereto, Joseph Califano, sued in his official capacity, was the Secretary of Health, Education and Welfare. He is consequently the named defendant but has been succeeded by Patricia Harris.

Payment to providers of services under Medicare is commonly carried out by fiscal intermediaries pursuant to contract with the Secretary. At the end of each fiscal year, a provider of services submits a Medicare cost report to its Intermediary showing the costs incurred by it during the fiscal year. As a participating provider of services under the Medicare program, plaintiff submitted bills for the cost reporting period ending December 31, 1975 and was denied reimbursement by its Intermediary, Blue Cross of Wisconsin, for charges stemming from four specific areas. The dispute concerned the following:

a. The Intermediary determined that the Tel Med program (tape recorded messages covering a variety of medical topics available to the general public) was not an educational activity customarily carried on by Medicare providers, but was a community service which was not necessary or proper in maintaining the operations of the hospital.

b. The Intermediary determined that patient telephones were provided for patient convenience since a nurse signalling system is in operation at the hospital and that telephones, therefore, were not an allowable expense.

c. The Intermediary determined that the refinancing of certain loans created excess funds, since the loan proceeds exceeded the amount of the existing debt. The Intermediary found that the interest expense on these excess funds was unnecessary and disallowed it. Further, the Intermediary determined that the excess loan proceeds also created excess funds that were used to fund depreciation. Therefore, interest expense derived from these funds was disallowed.

d. The Intermediary determined that an arbitrary amount of overhead was allocated to nonpaid workers' meals. Therefore, it calculated the overhead based on the percentage of direct cost of these meals divided by total cafeteria costs times the cost centers allocated to the cafeteria.

On February 25, 1977, the Intermediary issued a Notice of Program Reimbursement to the plaintiff for the cost reporting period ending December 31, 1975. Thereafter, pursuant to 42 U.S.C.A. § 1395oo and 42 CFR § 405.1841, plaintiff appealed the denial of reimbursement to the Provider Reimbursement Review Board (PRRB). The PRRB has been established by Congress to adjudicate disputes between the Secretary and providers over reimbursement under the Medicare Act.

On June 14, 1978, a hearing was held before the PRRB. At the hearing, the In-termediary proposed to revise its adjustment and treat one-third of the cost of the meals as an allowable cost. The Intermediary based this formula on the assumption that lay employees eat one meal per day in the plaintiff's cafeteria, and that nonpaid workers eat three meals per day in the cafeteria. Since the cost of meals to lay employees is subsidized as a fringe benefit, and since the nonpaid workers are required to be treated on an equal basis with the regular employees, it was found that the nonpaid workers would receive the proper amount if one-third of their meal costs are treated as allowable for Medicare reimbursement.

On August 29, 1978, the PRRB rendered a decision holding that pursuant to the Medicare Act and regulations: (1) the plaintiff's cost of operating a health information service is a public relations expense directly or indirectly related to patient care; (2) a portion of the cost of telephones in patient rooms in excess of the per call charge is not an allowable cost; (3) the amount of a loan in excess of the amount needed to refinance existing debt was not necessary; (4) the cost of sisters' meals as a component of sisters' maintenance is more than the cost of equivalent fringe benefits of other employees.

On October 27, 1978, the Secretary, through the Health Care Financing Administration, reviewed the decision of the PRRB and affirmed the PRRB on all issues except that pertaining to the cost of the plaintiff's health information service, which it reversed. The plaintiff received notice of the PRRB decision on November 6, 1978. It is the final decision by the Secretary which is challenged in this action.

*Discussion*

■ Jurisdiction of the Court in this matter is limited to a review of the administrative record and final decision to determine whether upon review of the record as a whole, the decision of the Secretary is supported by substantial evidence. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The Court has found no pertinent judicial precedent

regarding the issues presented in this action, nor are they addressed specifically in the statute.

### A. *The Tel-Med Program*

The first issue in this case is whether the operating cost of plaintiff's Tel-Med system of recorded health messages is an allowable expense within scope of the Medicare program. Plaintiff argues that it is an allowable public relations expense.

■ The Court disagrees. 42 CFR § 405.451(a), promulgated pursuant to the Medicare Act, in pertinent part provides:

*Principle.* All payments to providers of services must be . . . related to the care of beneficiaries.

Similarly, the Provider Reimbursement Manual, prepared by the Secretary for the purpose of explaining the statute and regulations, provides for public relations expenses in Section 2136. It states that the allowability of advertising costs "depends on whether they are reasonable, appropriate and helpful in developing, maintaining and furnishing covered services *to Medicare beneficiaries* by providers of services." (Emphasis by the Court). The use of the Tel-Med system was not restricted to the plaintiff's patients; it was available to the community at large. The Court concludes, therefore, that the use of the system was for rendering community health services and was not related to the care of the beneficiaries within the meaning of the above regulatory scheme. The Court accordingly affirms the decision of the Secretary.

### B. *Telephone Service*

The second issue in this case is whether the entire portion of the cost of telephones in patients' rooms in excess of the per call cost is an allowable expense, as argued by plaintiff.

■ The Medicare Act excludes reimbursement for items or services "which constitute personal comfort items." 42 U.S.C. § 1395y(a)(6). 42 CFR § 405.301(j) specifically enumerates telephone service as an example of a non-reimbursable, personal comfort expense. The Court notes the operation of a nurse-signalling system in plaintiff-hospital and concludes, therefore, that the telephones were provided for the patients' personal comfort. They are accordingly excluded from coverage under the Act, and the Secretary's decision is affirmed.

### C. *Interest Expense*

■ The third issue in this case is whether to disallow the interest expense on loans taken to refinance existing debt. These loan proceeds exceeded the amount of the existing debt. The Court finds, therefore, that the refinancing of this debt created excess funds. 42 CFR § 405.419(a) states in pertinent part:

*Principle.* Necessary and proper interest on both current and capital indebtedness is an allowable cost . . . .

However, 42 CFR § 405.419(b)(2) further provides in part:

. . . Loans which result in excess funds or investments would not be considered necessary.

The Court concludes that the interest expense incurred in connection with the excess funds herein was unnecessary and nonallowable for Medicare reimbursement, and the decision of the Secretary is affirmed.

### D. *Cost of Sisters' Maintenance*

The fourth issue in this case is whether the method adopted by the Secretary for allocating overhead to "Sisters' Maintenance" is proper. This dispute stems from the fact that the plaintiff as a church-related hospital, employs nonpaid workers. Plaintiff includes the value of the Sisters' services in its cost report because it makes a payment to their affiliate religious organization for the value of these services. The payment, however, is reduced by the amount the plaintiff incurs to support the nonpaid workers. This amount is referred to as nonpaid workers' maintenance. Plaintiff disagrees with the amount of administrative expenses that were allocated to this cost center.

The specific item of maintenance before the Court is the cost of Sisters' meals. Plaintiff offers meals at reduced cost to all employees as a fringe benefit. It was found below that plaintiff presented arbitrary estimates of the overhead associated with the Sisters' meals. Plaintiff's estimates were disallowed, therefore, pursuant to 42 CFR § 405.424(a), which, in discussing the value of services of nonpaid workers, states in pertinent part:

> The amounts allowed are not to exceed those paid others for similar work. Such amounts must be identifiable in the records of the institutions as a legal obligation for operating expenses.

 Because of the dearth of accurate records for the year 1975 on this issue, defendant's calculation rests on the assumption that all employees at the hospital except the Sisters avail themselves of the fringe benefit to the extent of one meal per day. Defendant further assumes that all of the Sister-employees consume three meals per day at the hospital. Accordingly, defendant treated one-third of the cost of Sisters' meals as an allowable cost.

At the hearing held October 26, 1979, plaintiff presented ample evidence refuting these unsupported assumptions. Plaintiff offered estimates for the year 1975 which were extrapolated from different years when conditions were similar but when more precise figures were obtainable. Based on the evidence presented at the hearing, the Court concludes that the determination reached below is arbitrary and capricious, not supported by substantial evidence, and must be vacated. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Greater accuracy would be achieved if paid employees are considered to have eaten two meals per day and the Sisters 2.33 meals per day.

Finally, plaintiff objects to the inclusion of certain other costs in defendant's calculation of the total expense of Sisters' meals. No evidence on this issue was presented at the October 26, 1979 hearing. The Court concludes that for purposes of calculating the total cost, the Sisters should be treated comparably to the paid employees.