The ARLINGTON HOSPITAL, Plaintiff,

v.

Richard S. SCHWEIKER, Secretary Department of Health & Human Services, Defendant.

Civ. A. No. 82–0093–A.

United States District Court, E. D. Virginia, Alexandria Division.

Sept. 17, 1982.

Griffin T. Garnett, III, Garnett, Kostik & Garnett, Arlington, Va., for plaintiff.

Linda B. Bridgman, Asst. U. S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

### I

This civil action arises out of plaintiff's suit to obtain under the federal Medicare program reimbursements for certain of its operational costs incurred during 1977. Specifically, the plaintiff seeks (i) $39,698 for costs incurred in providing uncompensated patient care pursuant to its obligations under the Hospital and Medical Facilities Amendments of 1964, 42 U.S.C. § 291 *et seq.;* (ii) $19,642 for providing inpatient telephone services to Medicare patients; (iii) $23,152 in costs not otherwise disallowable for which plaintiff claims it was improperly denied reimbursement as part of its physician billing services.

Plaintiff is a short-term, general, acute-care hospital located in Arlington, Virginia. It is a qualified provider of services under the Medicare program. 42 U.S.C. § 1395cc; 42 CFR § 405.1011 *et seq.* Under the Medicare program, providers are reimbursed for their "reasonable costs" of providing services to Medicare beneficiaries; reasonable costs are defined as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services. . . ." 42 U.S.C. § 1395x(v)(1)(A).

Certain costs are specifically excluded from coverage of the Medicare program. 42 U.S.C. § 1395y. Among the costs so excluded are any expenses incurred for items or services "which constitute personal comfort items." 42 U.S.C. § 1395y(a)(6). The Secretary's regulations give as examples of personal comfort items for which costs are not reimbursable "a television set, or telephone service, etc." 42 CFR § 405.-310(j) (parenthesis deleted).

Plaintiff also received $1,215,000 in federal construction financing between 1955 and

1963 under the Hill-Burton Act. As a condition for receiving the grant, plaintiff was required to furnish indigents access to a reasonable volume of medical service. 42 U.S.C. § 291c(e)(2). Additionally, in 1972, as a result of litigation concerning obligations of Hill-Burton grantees, the Secretary promulgated 42 CFR § 53.111, establishing Hill-Burton compliance guidelines. That regulation required hospitals receiving Hill-Burton assistance to budget and pay for a specified level of uncompensated care for the indigent as a condition to receipt of federal assistance.

During 1977, plaintiff incurred costs of providing telephone services, and costs of uncompensated care under the Hill-Burton Act. The plaintiff felt that it should be reimbursed for that portion of telephone costs attributable to Medicare patients, and that a portion of the uncompensated care costs it was compelled to incur should be reimbursable under Medicare as would be other construction financing costs. Therefore, the plaintiff included these costs in its monthly cost reports during 1977 and asked for reimbursement of these amounts. The monthly reimbursements are made for the Secretary by a fiscal intermediary. 42 U.S.C. § 1395g. At the conclusion of each fiscal year, Medicare providers file a cost report with the intermediary. *Id.* The intermediary may retroactively adjust payments it has made during the previous year. *Id.* Blue Cross Association, and its subcontractor, Group Hospital, Inc., acting as intermediary in this case, reduced plaintiff's reimbursable expenses for the items at issue here.

The plaintiff appealed the intermediary's decisions on these three amounts to the Provider Reimbursement Review Board ("the PRBB"), pursuant to 42 U.S.C. § 1395 oo (a). The plaintiff and the intermediary agreed to incorporate the record developed in the Florida Hospital Group Appeal, P.R.B.B. Decision No. 79–091, as part of the record with respect to the patient telephone and Hill-Burton uncompensated care issues. The PRBB, based on the Florida record, allowed reimbursement for the Hill-Burton uncompensated care costs, and disallowed the portion of the telephone costs attributable to patients' personal use. The PRBB also affirmed the intermediary's method for calculating the amount of the hospital's physician billing services to be disallowed. On December 2, 1981, the Deputy Administrator, acting as the Secretary's delegate, affirmed the PRBB's decisions concerning telephone costs and physician billing services, but reversed the PRBB's decision concerning Hill-Burton uncompensated care. Plaintiff appeals the decision of the Deputy Administrator.

Jurisdiction in this case is based upon 42 U.S.C. § 1395oo (f)(1). Review is to be conducted according to 5 U.S.C. § 701 *et seq.,* which provides that the Secretary's decisions may be overturned only if they were arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or unsupported by substantial evidence.

The cause is before the court on cross-motions for summary-judgment. *See* Fed.R. Civ.P. 56(a), (b). There are no material issues of fact to be resolved. This being so, the court concludes the following: as to the Hill-Burton free care issue, the Secretary's motion for summary judgment is granted and the plaintiff's denied; as to the patient telephone issue, the Secretary's motion is denied and the plaintiff's granted; and as to physician billing services, the Secretary's motion is denied, and the cause remanded for further proceedings consistent with this opinion.

II

The plaintiff's argument that the Hill-Burton uncompensated care is reimbursable is based upon the contention that such costs are no different than other indirect costs, such as depreciation or interest, which *are* reimbursable. *See* 42 CFR § 405.401 *et seq.* In support of its argument, plaintiff cites many cases in which similar arguments were successful, and Hill-Burton uncompensated care costs were held to be reimbursable. *See Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381 (5th Cir. 1981), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70

L.Ed.2d 248 (1981); *Iredell Memorial Hospital v. Schweiker,* 535 F.Supp. 795 (W.D.N.C. 1982); *St. James Hospital v. Harris,* 535 F.Supp. 751 (N.D.Ill.1981); *Johnson County Memorial Hospital v. Schweiker,* 527 F.Supp. 1134 (S.D.Ind.1981); *Metropolitan Medical Center v. Harris,* Civil No. 80–67 (M.D.Fla., October 20, 1981); *Rapides General Hospitals v. Matthews,* 435 F.Supp. 384 (W.D.La.1977), *vacated on other grounds,* No. 77–3125 (5th Cir. 1978). *But cf., St. Mary's of Nazareth Hospital Center v. Department of Health & Human Services,* 531 F.Supp. 419 (N.D.Ill.1982); *Harper-Grace Hospitals v. Schweiker,* Civil No. 80–72082 (E.D.Mich., April 1, 1981).

However, regardless of what might otherwise have been the merits of plaintiff's position, recent congressional activity must control this court's decision in the case before it. Section 106 of The Tax Equity and Fiscal Responsibility Act of 1982, Pub.L.No. 97–248, 51 U.S.L.W. 5, 9 (1982), amends 42 U.S.C. § 1395x(v)(1) by redefining the term "reasonable cost" to require that the

> costs respecting care provided by a provider of services, pursuant to an assurance under title VI or XVI of the Public Health Service Act that the provider will make available a reasonable volume of services to persons unable to pay therefor, shall not be allowable as reasonable costs.

The Conference Report on that bill states that the provision "is intended to clarify that Hill-Burton free care costs have never been, and are not, allowable for Medicare reimbursement purposes." H.R.Rep.No.97–760, 97th Cong., 2d Sess. at 431, U.S.Code Cong. & Admin.News 1982, pp. 781, 1211.

■ Section 106(b) of the same Act provides that the amendment

> shall be effective with respect to any costs incurred under title XVIII of the Social Security Act, except that it shall not apply to costs which have been allowed prior to the date of enactment of this act pursuant to the final court order affirmed by a United States Court of Appeals.

Congress passed the bill containing the amendment August 19, 1982, and the President signed it into law September 3, 1982. The plaintiff does not fall within the narrow exception provided for litigants whose case has been settled authoritatively. The amendment apparently eliminates any claim for Medicare compensation of Hill-Burton costs plaintiff might have, since the amendment unequivocally bars Hill-Burton free care costs from the category of costs for which Medicare may supply reimbursement.

The plaintiff's asserted claim with which Section 106 purportedly interferes is its supposed right to Medicare reimbursement for Hill-Burton uncompensated care costs. But the entitlement plaintiff claims was not expressly given by statute or regulation; it was, rather, based on plaintiff's own reading of the Medicare Act and interpretation of its legislative history. The Secretary obviously gave that Act a different reading. While the only circuit court that has ruled on the issue affirmed the plaintiff's view of congressional intent, see *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381 (5th Cir. 1981), the recent amendment suggests congressional disagreement with that reading.

The Supreme Court has previously indicated that subsequent congressional legislation which declares the intent of an earlier statute is entitled to "great weight". *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969); *FHA v. The Darlington Inc.,* 358 U.S. 84, 90, 79 S.Ct. 141, 145, 3 L.Ed.2d 132 (1958). *See also Ruhe v. Bergland,* 683 F.2d 102 at 103–104 (4th Cir. 1982). The weight to be given congressional action is all the greater when the statutory modification is as direct as that here. Congress has made manifest its disapproval of such decisions as *Presbyterian Hospital.* In order to assure that courts do not continue to misinterpret its intent in enacting the Medicare Act, Congress revised the Act itself.

The plaintiff argues that despite this recent amendment, this court should rule in its favor. The plaintiff asserts that,

through its retroactive denial of compensation for services already rendered, the amendment constitutes a taking of property without just compensation under the Fifth Amendment. That amendment provides in pertinent part that no person shall "be deprived of life, liberty or property without due process of law; *nor shall* private property be taken for public use without just compensation." Assuming for the sake of argument that prior to Section 106's enactment that the plaintiff had some colorable claim to reimbursement which the enactment of Section 106 revokes, this court must determine whether Section 106 so burdens that claim as to be unconstitutional.

■ A court evaluating the constitutionality of a statute with retrospective effect must consider the nature and strength of public interest served by legislation. *Pension Benefit Guaranty Corp. v. Ouimet Corp.,* 470 F.Supp. 945 (D.Mass.1979), *aff'd* 630 F.2d 4 (1st Cir. 1979), *cert. denied,* 451 U.S. 401, 101 S.Ct. 1836, 68 L.Ed.2d 248 (1980), and the nature of the claimants and their asserted rights. *U. S. v. Hawaii County,* 473 F.Supp. 261 (D.Haw.1979). *See generally, Bradley v. School Board of City of Richmond,* 416 U.S. 696, 717, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476 (1974).

■ The public interest involved in passage of Section 106, which operates to remove a perceived defect in the Medicare Act that Congress believed led to that Act's misinterpretation by courts, is the strong public interest in the smooth functioning of government. C. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692, 705 (1960). Curative measures such as Section 106 are necessary to "eliminate the windfall from an unexpected judicial decision." *Id.,* at 718.

The nature of the claimants purported rights relates to their expectation, created by their reading of the Medicare Act and the *Presbyterian Hospital* court's affirmation of that reading, that Medicare would compensate them for the Hill-Burton costs. But it is well established that "legislation readjusting rights and burdens is not unlawful merely because it upsets otherwise settled expectations." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

Plaintiff attempts to characterize their expectation as the federal government's "financial obligation", which is portrayed as contractual in nature. But Section 106 denies that any such obligation was ever intended to arise. Thus, the plaintiff had, at best, the hope or possibility that this court might grant them the relief they sought, which relief this court denies. The strength of the public interest involved, and the relative insubstantiality of the plaintiff's interest, dictate such a result.

■ The court finds that it must follow the general principle that "a court is to apply the law in effect at the time it renders the decision, unless doing so would result in manifest injustice or there is statutory or legislative history to the contrary." *Bradley v. Richmond School District,* 416 U.S. 696, 717, 94 S.Ct. 2006, 2019, 40 L.Ed.2d 476 (1974). *See also, United States v. Fresno Unified School District,* 592 F.2d 1088, 1093 (9th Cir. 1979). In the absence of a showing of manifest injustice this court must apply the will of Congress. Accordingly, the Secretary's summary judgment motion relating to the Hill-Burton free care costs issue is granted, and the plaintiff's motion is denied.

### III

At the outset of its argument that this court should affirm the Secretary's decision to disallow costs associated with patient telephones, the Secretary raises a jurisdictional argument. The Secretary contends that 42 U.S.C. § 1395*oo* (g) precludes judicial review of any claims by a provider for reimbursement of costs incurred in furnishing items an intermediary determined to be a "personal comfort item" under 42 U.S.C. § 1395y. Section 1395*oo* (g) provides:

The finding of a fiscal intermediary that no payment may be made under this subchapter for any expenses incurred for items or services furnished to an individu-

al because such items are listed in section 1395y of this title shall not be reviewed by this Board, or by any court pursuant to an action brought under subsection (f) of this section.

Patient telephone costs are not "listed" in 42 U.S.C. § 1395y; however, 42 U.S.C. § 1395y(a)(6) provides

no payment may be made under part A or part B of this subchapter for any expenses incurred for items or services...

(6) which constitute personal comfort items.

Medicare regulations issued pursuant to 42 U.S.C. § 1395hh provide personal telephone service as an example of excluded personal comfort items. *See* 42 CFR § 405.310(j).

Two courts confronted with claims for personal telephone costs have allowed reimbursement for such costs without addressing the jurisdictional issue. *See Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981); *St. Francis Hospital, Inc. v. Califano,* 479 F.Supp. 761 (D.D.C.1979). Only two courts confronting the patient telephone question have raised this jurisdictional issue. *See Memorial Hospital et al. v. Schweiker,* No. 80–67 (M.D.Fla., October 20, 1981), and *St. James Hospital v. Harris,* 535 F.Supp. 751 (N.D.Ill.1981). The *Memorial Hospital* court concluded that it was precluded from judicial review. The *St. James Hospital* court, based on a finding that a patient telephone was not a personal comfort item within the meaning of § 1395y, found the jurisdictional bar inoperative without even addressing the meaning of the words "listed in" as they appear in § 1395*oo* (g).

■ Telephones are not among the items and services listed in § 1395y. Personal comfort items *are* among the items listed, but no item is specifically described as such an item. Indeed, the legislative history of § 1395y(a)(6) makes it clear that no items are *per se* excluded under the personal comfort item standard. *See generally, St. James Hospital v. Harris,* 535 F.Supp. at 754. Such items are excluded only when they do not "contribute meaningfully to the

treatment of an illness or injury..." S.Rep.No.404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Admin.News 1943, 1989.

Thus, whether any item falls within the "personal comfort item" category will be in part an administrative determination. Precluding review of such administrative determinations would not isolate merely the finite group of items which Congress gave ample statutory consideration in § 1395y; it would give administrative agencies potentially unbridled discretion to prevent reimbursement for items which Congress has no intention to exclude. The patient care item at issue here, personal telephone service, is a particularly revealing example of the risks involved if administrative decisions are freed from judicial scrutiny: at least one court has found that Congress did not intend to exclude telephones *per se,* but intermediaries nonetheless deny reimbursement for telephones on the basis of the Secretary's *per se* rule. *See St. James Hospital v. Harris,* 535 F.Supp. 751 (N.D.Ill. 1981).

■ Such a result, allowing potentially unbridled administrative action, runs contrary to the presumption in favor of judicial review. *See Dunlop v. Bachowski,* 421 U.S. 560, 567, 95 S.Ct. 1851, 1857, 44 L.Ed.2d 377 (1974); *Tran Qui Than v. Regan,* 658 F.2d 1296, 1301 (9th Cir. 1981); *People's Gas, Light & Coke v. U. S. Postal Service,* 658 F.2d 1182, 1191 (7th Cir. 1981). To overcome the presumption favoring judicial reviewability, the party asserting nonreviewability must demonstrate by clear and convincing evidence that Congress intended to restrict judicial access. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967).

■ This court finds that the defendant has not come forward with clear and convincing evidence that Congress intended to preclude judicial review of administrative decisions regarding personal comfort items. While this category does appear in Section 1395y(a)(6), it does not constitute a specific item or service that could be identi-

fied with reference only to the § 1395y list itself. The court accepts plaintiff's contention that the words "listed in Section 1395" as they appear in Section 1395oo (g) means items explicitly and specifically listed in that section of the Act. Congress intended to leave mere ministerial decisions as to specifically listed items to administrative procedures without needless reference to judicial reconsideration. But this court finds that because of the potential effect of precluding judicial review of administrative decisions regarding personal comfort items, Congress could not have intended to preclude review of that latter category.

Were this court to find that Section 1395 oo (g) precluded judicial review of all intermediaries' actions excluding reimbursement based on the amorphous "personal comfort item" standard, very serious problems would arise because of the role of the non-governmental intermediary. The intermediary would, if the Secretary's interpretation of Section 1395oo (g) were correct, in effect have unreviewable discretion to determine what providers' claims are reimbursable. And in situation where, as here, the intermediary's decision merely implements the Secretary's regulation, the intermediary's decision would, if judicial review were precluded, isolate from review both the intermediary's decision and the Secretary's regulation. As the Sixth Circuit observed, "(i)t would raise grave constitutional doubts if we held that the Secretary had unreviewable discretion in reimbursing Medicare providers, particularly if this discretionary authority was delegable to private parties." *Chelsea Community Hospital v. Michigan Blue Cross Association,* 630 F.2d 1131, 1135 (6th Cir. 1980).

This court accordingly concludes it is neither precluded from reviewing the intermediaries' decisions regarding "personal comfort items", nor from reviewing the Secretary's attempt to predetermine intermediaries' decisions by promulgating a regulation that intermediaries are obligated to follow. Having decided it has jurisdiction to consider the patient telephone question, the court now turns to the merits of the issue.

The plaintiff's argument that the Secretary's affirmation of the PRBB's exclusion of reimbursement of patient telephone services turns on two assertions: (i) that 42 CFR § 405.310(j), which lists telephone services as an example of a personal comfort item, is contrary to Congressional intent and legislative history; and (ii) the uncontested evidence of the Florida Hospital Group Appeal shows that telephones have therapeutic value.

The Secretary responds that the regulation naming telephone service as an example of a "personal comfort item" is reasonable and consistent with legislative intent. The Secretary also asserts that his distinction between intra-hospital phone systems and systems available for personal use is a reasonable distinction; if such uses as are claimed here were compensable, no item which might theoretically add to a patient's therapy could be held non-reimbursable. The Secretary contends that the issue is not whether patient telephones have some therapeutic value, but whether the Secretary acted reasonably in excluding from reimbursement some items he determined to fall within the category of "personal comfort items" despite those items avowed therapeutic potentiality.

Three courts have reached the merits of the patient telephone issue. Two courts have upheld the regulation. *See Presbyterian Hospital of Dallas v. Schweiker,* 638 F.2d at 384–86 (no constitutional right to telephone reimbursement); *St. Francis Hospital, Inc. v. Califano,* 479 F.Supp. 761, 764 (D.D.C.1979) (where separate nurse signaling equipment is available, Medicare Act and regulations exclude reimbursement for patient telephones). In *St. James Hospital,* supra, the court held the regulation invalid.

The *St. James Hospital* case is particularly relevant here because that decision was based upon the record established in the Florida Hospital Group Appeal. The parties to this action have also stipulated to that record. In the Florida Hospitals Group Appeal, the PRBB, despite concluding that bedside telephones had therapeutic value and that telephones should be a covered

service, held that it was "locked into the regulation" naming telephone service as a personal comfort item and therefore denied reimbursement. The *St. James Hospital* court found the regulation inconsistent with the enabling statute, and that, in the case before it, the costs of therapeutic patient telephone service were improperly disallowed.

The questions the *St. James Hospital* court asked, and which we ask here, are whether the Secretary's action allowing the PRBB's decision to stand is supported by substantial evidence when the record is viewed as a whole, 42 U.S.C. § 1395oo(d); 5 U.S.C. § 706(2)(A); and whether the Secretary exercised discretion through a reasoned consideration of the relevant factors and did not commit a clear error of judgment. 535 F.Supp. at 762.

After describing "substantial evidence" as constituting "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (citing *Beasley v. Califano,* 608 F.2d 1162, 1168 [8th Cir. 1979]), the *St. James Hospital* court concluded that the Board did not allow reimbursement of the patient telephone costs because there was a lack of evidence proving therapeutic value. Indeed, the court found there was "overwhelming proof" of that. Rather, the court found the PRBB disallowed reimbursement only because it felt bound by 42 CFR § 405.310(j), the regulation proscribing reimbursement for personal telephone service as an example of a personal comfort item.

The *St. James Hospital* court then reviewed the legislative history of the Medicare Act's provisions relating to personal comfort items, and concluded that Congress "did not intend to make patient telephones *per se* excluded from Medicare coverage." *Id.,* 535 F.Supp. at 764. That court found that what Congress intended was to exclude such services from coverage if they "were requested for the convenience of a patient and have no meaningful relation to the treatment of an illness..." *Id.* The court concluded that 42 CFR § 405.310(j)'s "simplistic prohibition" failed to distinguish between the telephone service furnished a patient at his request and a hospital furnished telephone intended to contribute to health care.

■ Generally, a regulation must be upheld unless it is inconsistent with its enabling legislation. *Green v. Philbrook,* 427 F.Supp. 834, 838 (D.C.Vt.1977), *rev'd on other gds.,* 576 F.2d 440 (2d Cir. 1978). The *St. James Hospital* court concluded that the regulation was inconsistent with the enabling legislation because it "prevents the paying of provider hospitals for their charges or the reasonable costs of furnishing Medicare beneficiaries with bedside telephones," *St. James Hospital v. Harris,* 535 F.Supp. at 764, in contravention of 42 U.S.C. § 1395f(a) (providers to receive reasonable cost of services) and 42 U.S.C. § 1395x(v)(1)(A) (Secretary prohibited from adopting regulations that shift costs to individuals not covered by Medicare).

The *St. James Hospital* court concluded that, based on the record before it, a telephone furnished by a hospital is not an item of comfort. It is a part of hospital therapy. Therefore, that court found that the Secretary's action affirming the PRBB's action was not supported by substantial evidence. The Secretary committed an error of judgment in construing and applying 42 CFR § 405.310(j) to exclude the costs that St. James Hospital incurred in furnishing Medicare patients with bedside telephones. Therefore, the Secretary's action under these circumstances was "arbitrary and capricious." 535 F.Supp. at 765.

■ This court, construing the same regulation, interpreting the same legislative history, and, indeed, reviewing the same record as was before the *St. James Hospital* court, is faced with a question that has already been adequately determined. This court accepts the holding of *St. James Hospital* and therefore concludes that summary judgment should be entered for the plaintiff on the patient telephone issue. Accordingly, the Secretary's action on this issue is reversed.

The Secretary expresses the fear that allowing reimbursement here will open the floodgates to claims for all varieties of services which could arguably be "therapeutic" as the telephone service was shown to be here. The Secretary's invocation of the Pandora's Box myth fails to persuade this court that costs for items which satisfy the statutory requirement for reimbursement should not be reimbursed. The court will consider questions relating to other items when such questions arise. If the Secretary feels that the standard as applied in this case is too broad, the Secretary should take his case to Congress, as he did with the Hill-Burton free care costs.

IV

As a service to its contracting physicians, the plaintiff in 1977 began offering physician billing services so that physician's fees could be billed to patients at the same time as hospital services. Both parties agree that costs associated with the hospital's own billing are reimbursable, and costs associated with the physician's billing are not. The parties' dispute revolves around the method by which the amount to be offset for physician billing services is calculated.

The plaintiff contends that the intermediary erred in disallowing plaintiff's method of calculating the costs of its admittedly non-reimbursable physician billing services. The intermediary rejected plaintiff's method and simply offset the revenue generated by the physician billing service. The PRBB and the Deputy Secretary affirmed the intermediary's methodology.

The Medicare regulations provide that the costs of service provided by a hospital are to be determined by identifying the direct costs of the service and prorating all indirect costs. 42 CFR § 405.453(d)(1). The regulations require that the data be accurate and in sufficient detail to accomplish its intended purpose. 42 CFR § 405.-453(c). In accordance with these regulations, plaintiff attempted to identify the costs of its physician billing services. Plaintiff concedes that its method is not 100%

accurate; but on the other hand, the revenues offset by the intermediary greatly exceed plaintiff's estimate. The plaintiff questions whether the Medicare Act or its regulations permit the intermediary to disallow otherwise allowable costs based on nothing more than the intermediary's opinion that the accounting method used to calculate those costs was inaccurate. The plaintiff contends that at a minimum the Secretary should have come up with his own cost accounting method. The Secretary responds that the plaintiff's cost allocation method had little relation to actual costs, and failed to take all costs into account. In the absence of an accurate cost determination method, the Secretary asserts that a revenue offset is an appropriate and adequate method.

Plaintiff's dissatisfaction with the Secretary's method is not only that the billing service revenues which the intermediary offset greatly exceeded plaintiff's estimate of the service's cost, but also that the intermediary made no attempt itself to calculate the cost. Plaintiff contends that it is entitled to recompense for "cost actually incurred", 42 U.S.C. § 1395x(v)(1)(A), not some convenient but random figure. Plaintiff's dissatisfaction is all the greater because the intermediary's witness testified that had revenues not exceeded cost, they would have found some way to determine the cost.

The plaintiff's argument, then, is that the Secretary's affirmance of the revenue offset represents arbitrary and capricious agency conduct. Under the arbitrary and capricious standard of review, agency action is presumed valid, and the reviewing court must uphold the agency's decision if it is rationally based. *American Paper Institute v. U. S. Environmental Protection Agency*, 660 F.2d 954, 962 (4th Cir. 1981). The Secretary asserts that this presumption of validity is most appropriate in situations such as the one presented here, where complex decisions involving the determination and allocation of costs are present. *See*

*Overlook Nursing Home v. United States,* 556 F.2d 500 (Ct.Cl.1977).

■ In order for this court to uphold the methodology endorsed by the Secretary here, this court must find a rational basis for the agency's action and must insure that the agency has demonstrated a rational connection between the facts found and the choice made. *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962); *Wawszkiewicz v. Department of Treasury,* 670 F.2d 296, 301 (D.C.Cir.1981). The testimony of the intermediary's witness at the PRBB hearing made it clear that the revenue offset method bore no relation to what cost information was available, but that cost data would have been used had revenues not exceeded costs. R. 117–19.

■ Agency action is arbitrary and capricious when it is willful and unreasoning action, without consideration and in disregard of facts or circumstances of the case. *First National Bank of Fayetteville v. Smith,* 508 F.2d 1371, 1376 (8th Cir. 1974), *cert. denied,* 421 U.S. 930, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975); *Jordan v. Bolger,* 522 F.Supp. 1197, 1202 (D.Miss.1981). The intermediary's action in this case is a classic example of willful and unreasoning action. Despite the statutory mandate to reimburse the "cost actually incurred", 42 U.S.C. § 1395x(v)(1)(A), the intermediary's testimony showed that it would employ a cost-based methodology only if costs exceed revenues. In other words, the intermediary's methodology was to use whatever figure entitled the provider to less reimbursement. The Secretary's affirmation of the intermediary's methodology contravenes his own regulation that Medicare payments to providers of services "should be fair." 42 CFR § 405.451(c)(1). For these reasons, this court finds the Secretary's actions arbitrary and capricious. 5 U.S.C. § 706(2)(A). The Secretary's decision is reversed, and this portion of the case is remanded for determination of a new accounting of the costs of physician billing services. The methodology should reflect the methodology that would have been used had revenues not exceeded costs.