BETH ISRAEL HOSPITAL OF
PASSAIC, etc., Plaintiff,

v.

Margaret M. HECKLER, etc., et
al., Defendants.

Civ. No. 82–1083.

United States District Court,
D. New Jersey.

March 29, 1983.

Klein, Chapman, Chester, Di Ianni, Greenburg, Henkoff & Siegel by Andrew S. Kessler, Clifton, N.J., for plaintiff.

Anne C. Singer, Asst. U.S. Atty., Newark, N.J., for defendants.

## OPINION

LACEY, District Judge.

Before the court are the parties' cross-motions for summary judgment.

## I. BACKGROUND

Plaintiff, Beth Israel Hospital of Passaic, instituted this action on April 8, 1982, seeking review of a final decision of the defendant, Secretary of the United States Department of Health and Human Services (Secretary).[1] The Secretary determined that

1. When plaintiff filed this suit, it named the past Secretary of Health and Human Services, Patricia Harris, as the defendant. The current

plaintiff was not entitled to reimbursement under the federal Medicare program for costs incurred in providing uncompensated medical care to non-Medicare patients pursuant to its obligations under the Hill-Burton Act, 42 U.S.C. §§ 291 *et seq.* The Secretary also determined that plaintiff was not entitled to Medicare reimbursement for the costs of providing uncompensated medical care to indigent patients, above and beyond its Hill-Burton obligations. Before discussing the merits of the case, it will be necessary to set out the statutory and regulatory framework in some detail.

Plaintiff is a 223-bed, short-term, acute care hospital located in Passaic, New Jersey. It participates in the federally funded health insurance program commonly known as "Medicare," which was established in 1965 by the enactment of Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.*[2] The purpose of the program is to ensure that adequate medical care is available to the aged and disabled throughout the country. S.Rep. No. 404, 89th Cong., 1st Sess., *reprinted in* 1965 U.S.Code Cong. & Ad.News 1943, 1964. To participate in the program, a health service provider must file an agreement with the Secretary, 42 U.S.C. § 1395cc; plaintiff has filed such an agreement. As a qualified provider of medical services, plaintiff is entitled to recover its "reasonable costs" of providing treatment to Medicare beneficiaries. 42 U.S.C. § 1395f(b)(1). The Social Security Act defines "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services . . .," and authorizes the Secretary to promulgate regulations defining reasonable cost with greater specificity. 42 U.S.C. § 1395x(v)(1)(A). Generally, a provider obtains reimbursement by submitting reports to a private health insurance organization which acts as a "fiscal intermediary," deter-

mining the amount of reimbursable "reasonable cost" and reimbursing the provider for those amounts. 42 U.S.C. § 1395h. In this case, Blue Cross of New Jersey (Blue Cross) acted as the fiscal intermediary between plaintiff and the Secretary.

This case arises, in part, from the intersection of the Medicare program with another federal program designed to make health care more widely available, the Hill-Burton program. Title VI of the Public Health Service Act, also known as the Hill-Burton Act, was passed in 1946 to provide federal funds for the construction and modernization of hospitals. Its purpose is to ensure adequate hospital service for all. 42 U.S.C. § 291(a). As a condition of receiving Hill-Burton funds, a hospital must agree to provide "a reasonable volume of services to persons unable to pay therefor." 42 U.S.C. § 291c(e)(2). Until 1972, the Secretary did not specify the amount of services that would be considered reasonable. In 1972, the Secretary specified that free care in the amount of 10% of the federal aid given, or 3% of the hospital's operating costs, per fiscal year, would be considered reasonable; as an alternative, the institution could provide free care to all indigents who requested it. 42 C.F.R. § 53.111(d).

In 1970, plaintiff received a Hill-Burton construction grant in the amount of $808,-445. In return, plaintiff agreed to provide $808,445 worth of free medical care to indigents over the next twenty years.[3] This case concerns free care provided in the years 1977, 1978, and 1979. In 1977 plaintiff provided free care, pursuant to its Hill-Burton agreement, in the amount of $33,-955; in 1978 and 1979 the amounts were $34,763 and $35,578, respectively. In each of those years plaintiff sought Medicare reimbursement for a proportionate share of the costs of rendering free care under its Hill-Burton agreement, and in each year

Secretary, Margaret M. Heckler, has been automatically substituted, pursuant to Federal Rule of Civil Procedure 25(d)(1).

2. Title XVIII of the Social Security Act is also known as the Medicare Act.

3. In its complaint, ¶ 6, plaintiff states that it agreed to provide $808,445 worth of free care over the next ten years; however, the briefs of the parties and the administrative record say that the obligation was spread over twenty years. The court assumes that the twenty-year figure is the correct one.

the fiscal intermediary, Blue Cross, disallowed those costs. In each of those years plaintiff also provided charity care which was unconnected with its Hill-Burton obligation; the cost of this care amounted to $40,050 in 1977, $74,147 in 1978, and $69,641 in 1979. Plaintiff sought reimbursement for these costs as well; Blue Cross denied reimbursement for all of them.

Plaintiff appealed the intermediary's decision to the Provider Reimbursement Review Board (PRRB), pursuant to 42 U.S.C. § 1395oo(a). A hearing was held on January 21, 1981. On December 4, 1981, the PRRB ruled that the plaintiff was entitled to reimbursement for the cost of rendering free care pursuant to its Hill-Burton agreement in 1977, 1978, and 1979, but was not entitled to reimbursement for the cost of rendering other free care during those years.

The Deputy Administrator of the Department of Health and Human Services' Health Care Financing Administration, on his own motion, then reviewed the PRRB's decision, pursuant to 42 U.S.C. § 1395oo. On February 1, 1982, the Deputy Administrator reversed the PRRB's decision on the Hill-Burton issue; he held that plaintiff was not entitled to Medicare reimbursement for costs of providing free medical care pursuant to a Hill-Burton agreement. He affirmed the PRRB's denial of reimbursement for costs of providing other free medical care.

The Deputy Administrator's discussion of the Hill-Burton issue is detailed and complete. He noted that the Hill-Burton Act, the Social Security Act, and the regulations promulgated pursuant to those Acts all forbid the reimbursement which plaintiff sought. He reasoned that the plaintiff promised to render free care in consideration for the Hill-Burton grant; that the plaintiff thus has a contractual obligation to furnish such care; and that allowing Medicare reimbursement for Hill-Burton free care costs would "render the Hill-Burton agreement meaningless and would compensate the [plaintiff] again for those costs which the government has already paid." Plaintiff's Brief, Exhibit J at 3. In addition, he noted that 42 C.F.R. § 53.111(f)(2),

issued under the Hill-Burton Act, specifically prohibits a health care facility from including in its computation of uncompensated services any amount which it is entitled to receive under any other governmental program, including Medicare. Turning to the Social Security Act, the Deputy Administrator pointed out that the plaintiff sought reimbursement for services rendered to individuals not otherwise covered by Medicare, in contravention of the clearly established statutory and regulatory objective that "the necessary costs of efficiently delivering covered services to individuals covered by the [Medicare program] will not be borne by individuals not so covered." 42 U.S.C. § 1395x(v)(1)(A); see also 42 C.F.R. §§ 405.402(a), 405.451(b)(1). He also noted that 42 U.S.C. § 1395f and 42 C.F.R. § 405.311(b) prohibit Medicare payment for any service which a provider is obliged by law of, or contract with, the United States to render at public expense, and reasoned that services rendered under a Hill-Burton agreement are rendered pursuant to both law and contract. In addition, the Deputy Administrator cited 42 U.S.C. § 1395y(a)(2), which provides that, "[n]otwithstanding any other provisions of [the Medicare Act]," no reimbursement will be made for services rendered to individuals who have no legal obligation to pay for them. The Secretary's regulations restate this prohibition: 42 C.F.R. §§ 405.402(c)(7) and 405.420 explicitly provide that charity allowances are not reimbursable. Finally, the Deputy Administrator found that Hill-Burton free care did not qualify as an allowable interest expense under 42 C.F.R. § 405.419. The Deputy Administrator did not discuss the issue of reimbursement for free care not rendered in connection with a Hill-Burton agreement, but simply affirmed the PRRB's conclusion on that issue.

The Deputy Administrator's decision is the final administrative decision of the Secretary. Plaintiff's Brief, Exhibit J at 10. Plaintiff received the Secretary's decision on February 9, 1982, and timely commenced this suit within sixty days thereafter. Jurisdiction exists pursuant to 42 U.S.C. § 1395 oo(f)(1). Review is to be conducted accord-

ing to 5 U.S.C. § 706, which provides that the Secretary's decision shall be set aside if it is found to be arbitrary, capricious, an abuse of discretion, not in accordance with law, contrary to the Constitution, or in excess of statutory authority.

The parties have filed cross-motions for summary judgment. As no material issues of fact exist, summary judgment is appropriate. For the reasons stated below, the defendant's motion must be granted and the plaintiff's motion denied.

## II. REIMBURSEMENT FOR FREE CARE RENDERED PURSUANT TO HILL–BURTON AGREEMENT

Plaintiff argues that Hill-Burton uncompensated care is reimbursable as an indirect cost of delivering services to Medicare beneficiaries. It relies on 42 U.S.C. § 1395f(b)(1), which states that a provider shall be paid the "reasonable cost" of providing services to Medicare beneficiaries or the customary charge, whichever is less; on 42 U.S.C. § 1395x(v)(1)(A), which defines "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services" and instructs the Secretary to promulgate regulations to ensure that "the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered, and the costs with respect to individuals not so covered will not be borne by [Medicare]"; and on 42 C.F.R. § 405.-451(b)(2), which describes allowable costs as those "which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities." Plaintiff states that it used its Hill-Burton grant to make capital improvements which benefit all patients, both Medicare and non-Medicare. In effect, it asserts that it "purchased" those improvements by providing free care. It argues that a proportionate share of the cost of the improvements (*i.e.,* a proportionate share of the cost of Hill-Burton free care) should be borne by Medicare patients; otherwise, plaintiff asserts,

non-Medicare patients will bear the entire cost of the capital improvements, and thus will bear part of the cost of delivering medical services to Medicare patients, in contravention of 42 U.S.C. § 1395x(v)(1)(A). Plaintiff characterizes the cost of Hill-Burton free care as an indirect cost of maintaining the hospital; it argues that, since other indirect costs such as depreciation and interest are reimbursable under Medicare, *see* 42 U.S.C. § 1395x(v)(1)(A); 42 C.F.R. §§ 405.417–405.419, the cost of Hill-Burton free care should be reimbursable as well. In support of its argument, plaintiff cites *Presbyterian Hospital of Dallas v. Harris,* 638 F.2d 1381 (5th Cir.), *cert. denied,* 454 U.S. 940, 102 S.Ct. 476, 70 L.Ed.2d 248 (1981), and *Rapides General Hospital v. Matthews,* 435 F.Supp. 384 (W.D.La.1977), *vacated on other grounds,* No. 77–3125 (5th Cir. Oct. 23, 1978), which used this reasoning to hold that Hill-Burton free care costs were reimbursable under Medicare.[4]

The Secretary argues that a recent amendment to the Social Security Act, which conclusively determined that Hill-Burton free care costs are not reimbursable under Medicare, decides this case in her favor. The Tax Equity and Fiscal Responsibility Act of 1982 was passed by Congress on August 17, 1982, and signed by the President on September 3, 1982. Section 106(a) of that act amends the section of the Social Security Act which empowers the Secretary to promulgate Medicare regulations, 42 U.S.C. § 1395x(v)(1), by adding the following subparagraph:

> (M) Such regulations shall provide that costs respecting care provided by a provider of services, pursuant to an assurance under Title VI or XVI of the Public Health Service Act that the provider will make available a reasonable volume of services to persons unable to pay therefor, shall not be allowable as reasonable costs.

Pub.L. No. 97–248, § 106(a), 96 Stat. 324, 337 (1982). The bill further provides:

---

4. Plaintiff also points to a recent amendment to New Jersey's unemployment compensation law, N.J.S.A. 43:21–1 *et seq.,* which is not relevant to the federal programs at issue here.

The amendment made by subsection (a) shall be effective with respect to any costs incurred under title XVIII of the Social Security Act, except that it shall not apply to costs which have been allowed prior to the date of the enactment of this Act pursuant to the final court order affirmed by a United States Court of Appeals.

*Id.,* § 106(b), 96 Stat. 324, 337. The Conference Report accompanying the bill states:

The provision [amending 42 U.S.C. § 1395x(v)(1)] is intended to clarify that Hill-Burton free care costs have never been, and are not, allowable for medicare reimbursement purposes. The provision, therefore, applies to all such costs that have been, or will be incurred except those recognized by the final judgment of a U.S. Court of Appeals entered into prior to enactment.

H.R.Rep. No. 97–760, 97th Cong., 2d Sess. at 431, *reprinted in* 1982 U.S.Code Cong. & Ad.News, 1190, 1211.

In response to the congressional mandate, the Secretary revised 42 C.F.R. § 405.420(b) "to state explicitly that uncompensated services furnished in fulfillment of a Hill-Burton free care obligation are considered charity allowances and as such cannot be considered allowable costs in computing Medicare reimbursement for providers." 47 Fed.Reg. 43657 (1982).[5] The Secretary noted that the revised regulation was consistent with the longstanding policy of the Department of Health and Human Services (HHS). *Id.* at 43656. In the Secretary's view, Section 106 of Public Law 97–248 and the revised 42 C.F.R. § 405.420(b) apply to "all costs incurred under Medicare, both before and after enactment of the amendment, except those specific costs allowed under court order in the *Presbyterian Hospital* decision [*supra,* 638 F.2d 1381]," which was the only Court of Appeals decision on the Hill-Burton free care issue at the time the bill was passed. 47 Fed.Reg. 43657 (1982). Consequently, the Secretary stated, the new regulation

is applicable to all past disputes concerning Medicare disallowances of costs of free care furnished under a Hill-Burton obligation except those cost years specifically litigated in the Presbyterian Hospital case, as well as future treatment of these costs. Any Hill-Burton costs paid by Medicare under the principle of the Presbyterian decision, but not specifically litigated therein, are impacted by this statutory amendment. These cost reports will be reopened and the Hill-Burton free care costs will be disallowed.

*Id.*

The new 42 U.S.C. § 1395x(v)(1)(M) and the revised 42 C.F.R. § 405.420(b) became effective while this action was pending. If the new law applies to this case, it clearly resolves the Hill-Burton issue in the Secretary's favor, and plaintiff does not argue to the contrary. Rather, plaintiff tries to avoid this result by arguing that "retroactive application" of the new law to its case would violate due process.[6]

Generally, "a court is to apply the law in effect at the time it renders its

---

**5.** The revised regulation states:

(b) *Definitions.—*

. . . .

(2) *Charity allowances.* Charity allowances are reductions in charges made by the provider of services because of the indigence or medical indigence of the patient. Cost of free care (uncompensated services) furnished under a Hill-Burton obligation are considered as charity allowances.

. . . .

(g) *Charity allowances.* Charity allowances have no relationship to beneficiaries of the health insurance program and are not allowable costs. These charity allowances include the costs of uncompensated services furnished under a Hill-Burton obligation. (Note:

In accordance with Sec. 106(b) of Pub.L. 97–248 (enacted September 3, 1982), this sentence is effective with respect to any costs incurred under Title XVIII of the Social Security Act, except that it does not apply to costs which have been allowed prior to September 3, 1982, pursuant to a final court order affirmed by a United States Court of Appeals.) . . . .

Amendments to 42 C.F.R. § 405.420, 47 Fed. Reg. 43658 (1982).

**6.** Plaintiff also asserts that retroactive application would violate equal protection. Since plaintiff has neither cited any law nor outlined any argument in support of this statement, the court will not consider it.

decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School District of City of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). *See also Sikora v. American Can Co.,* 622 F.2d 1116, 1120 (3d Cir.1980); *Yakim v. Califano,* 587 F.2d 149, 150 (3d Cir.1978). Here, the language of the statute indicates that the new 42 U.S.C. § 1395x(v)(1)(M) is to be retroactive. Section 106(b) of the Tax Equity and Fiscal Responsibility Act states that the amendment shall apply to "any costs," with the exception of one particular group of prior costs (those allowed by a court order which is affirmed by a United States Court of Appeals). By implication, the amendment applies to all prior costs which have not been allowed by a court order and affirmed by a court of appeals. The legislative history makes clear that this is, in fact, the correct interpretation of the act. Thus the issue is not whether the amendment should be retroactively applied, but whether the retroactive legislation itself is constitutional.

The statute in question regulates economic matters only; plaintiff has not alleged that it infringes any fundamental rights. It is well settled that "legislative acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). *See also, e.g., Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.,* 348 U.S. 483, 487–88, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955); *In re Ashe,* 669 F.2d 105, 110 (3d Cir.1982). In this case, plaintiff has made no showing that Congress acted irrationally in enacting section 106 of the Tax Equity and Fiscal Responsibility Act of 1982. Plaintiff argues that the legislation violates due process because it deprives plaintiff of a "matured

and vested right" to Medicare reimbursement for Hill-Burton free care costs. Plaintiff's Supplemental Brief at 1. The nature of the plaintiff's right, however, is only one of the factors which courts consider in assessing the constitutionality of retroactive legislation; "the nature and strength of the public interest served by the legislation" and "the extent to which the legislation impairs the asserted [private] interest" must also be taken into account. *St. Mary of Nazareth Hospital Center v. Department of Health & Human Services,* 698 F.2d 1337, 1345 (7th Cir.1983).

Plaintiff's statement that it had a "matured and vested right" to reimbursement mischaracterizes the nature of its interest. At the time plaintiff incurred the Hill-Burton free care costs, no statute or regulation had granted hospitals a right to reimbursement of such costs. The Secretary, in fact, had consistently interpreted the statute and regulations to disallow such costs; no court within this circuit had reversed or even questioned the Secretary's interpretation. Nor did any of these sources create a right to reimbursement at any time after plaintiff incurred the costs.[7] As the Seventh Circuit stated in *St. Mary of Nazareth Hospital Center, supra,* plaintiff's purported right is merely an expectation, "aris[ing] out of the [plaintiff's] reading of the Medicare Act through rose colored glasses, a reading which is to the [plaintiff's] pecuniary advantage, and the Fifth Circuit's interpretation of the Medicare Act and the Hill-Burton Act [in *Presbyterian Hospital, supra,* 638 F.2d 1381]." 698 F.2d at 1345. *See also Arlington Hospital v. Schweiker,* 547 F.Supp. 670, 675 (E.D.Va.1982).

Even assuming *arguendo* that plaintiff did have a right to reimbursement, the statute would not necessarily be unconstitutional. It is well settled that "legislation readjusting [economic] rights and burdens is not unlawful solely because it upsets otherwise settled expectations." *Usery v. Turner Elkhorn, supra,* 428 U.S. at 16, 96 S.Ct. at 2892. The court must go on to analyze the nature

---

7. Plaintiff points to the fact that the PRRB upheld its claim for reimbursement for Hill-Burton free care; this is irrelevant, since the Secretary's final decision reversed the PRRB.

of the public interest which the retroactive legislation serves. The legislation in question here serves a strong public interest: it clarifies the Medicare Act, avoids waste of Medicare funds, and prevents vitiation of the Hill-Burton Act. This public policy outweighs the hospital's relatively insubstantial interest in "double recovery" for its free care costs. The Seventh Circuit, reaching the same conclusion, stated:

> To reach any other conclusion would put the government in the anomalous position of acting as a permanent life support system for health care facilities who provide services for the indigent without requiring that the hospitals fulfill the contractual obligations they incurred when accepting Hill-Burton funds. This type of financial reimbursement is totally inconsistent with the principles of the Hill-Burton Act.... We refuse to permit hospitals to subvert federal aid programs through the use of federal funds to subsidize the financial dilemma they themselves created.

*St. Mary of Nazareth Hospital Center, supra,* 698 F.2d at 1344. *See also Arlington Hospital, supra,* 547 F.Supp. at 675. Retroactive application of the amendment also serves the public interest, since it allows the Secretary to continue following the consistent policy of her Department, avoids further waste of tax dollars, and prevents windfalls to hospitals located within the Fifth Circuit (with the exception of the *Presbyterian Hospital* plaintiff).

Because section 106 of the Tax Equity and Fiscal Responsibility Act of 1982 reflects a rational balancing of the public interest and the hospitals' interest, it is constitutional. *See Usery v. Turner Elk-*

*horn supra,* 428 U.S. at 17–19, 96 S.Ct. at 2893–94. The other courts which have considered this issue have reached the same conclusion. *See St. Mary of Nazareth Hospital Center, supra,* 698 F.2d at 1343–45; *Johnson County Memorial Hospital v. Schweiker,* 698 F.2d 1347, 1350–51 (7th Cir. 1983); *Arlington Hospital, supra,* 547 F.Supp. at 675. *See also Harper-Grace Hospitals v. Schweiker,* 691 F.2d 808, 811 (6th Cir.1982) (applying section 106 to a pending case, on the grounds that a court is to apply the law in effect at the time it renders its decision). *Cf. Iredell Memorial Hospital, Inc. v. Schweiker,* 699 F.2d 196 (4th Cir.1983) (holding that Hill-Burton free care costs are not reimbursable under Medicare, without mentioning the amendment to 42 U.S.C. § 1395x(v)(1)); *Metropolitan Medical Center v. Harris,* 693 F.2d 775 (8th Cir.1982) (holding that Hill-Burton free care costs are not reimbursable under Medicare; court noted but did not rely on the amendment to 42 U.S.C. § 1395x(v)(1)).[8]

Section 106 of the Tax Equity and Fiscal Responsibility Act of 1982, amending 42 U.S.C. § 1395x(v)(1) and providing for retroactive application of the amendment, is constitutional as applied to plaintiff. Plaintiff is not entitled to Medicare reimbursement for costs of providing Hill-Burton free care.

## III. REIMBURSEMENT FOR OTHER FREE CARE

■ Plaintiff also claims that it is entitled to reimbursement for free medical care which is not provided pursuant to its Hill-Burton agreement. Plaintiff must provide uncompensated care to indigents in order to

---

**8.** *Daughters of Miriam Center for the Aged v. Mathews,* 590 F.2d 1250 (3d Cir.1978), cited by plaintiff in support of its due process argument, is not on point. In that case, the Third Circuit held that retroactive application of a Medicare depreciation recapture regulation was improper because of the Secretary's failure to comply with the Administrative Procedure Act. The statute and regulation were silent on the retroactivity issue; the Secretary relied on a provision of the Provider Reimbursement Manual which purported to authorize retroactive application. The court declined to invest the Manu-

al with the presumption of constitutionality which a statute would have, since "[t]he constitutional legitimacy that inheres in Congress by virtue of its accountability to the electorate is absent ... from the administrative process." *Id.* at 1257. The court's holding was narrowly limited, and did not reach the constitutional issue. *Id.* at 1263. In the present case, however, we are concerned with a statute, enacted by Congress, which does enjoy the presumption of constitutionality and which explicitly provides for retroactive application.

maintain its status as a tax-exempt institution. *See* 26 U.S.C. § 501(a), (c)(3); Rev. Rul. 545, 1969–2 C.B. 117; Rev.Rul. 185, 1956–1 C.B. 202. Plaintiff argues that, since its tax-exempt status benefits Medicare as well as non-Medicare patients, it should receive Medicare reimbursement for a proportionate share of its non-Hill-Burton charity care costs.

The Secretary rejected plaintiff's argument, upholding the PRRB's decision that 42 C.F.R. § 405.420 specifically excludes charity care from reimbursable Medicare costs. That regulation provides, in pertinent part:

(a) *Principle.* Bad debts, charity, and courtesy allowances are deductions from revenue and are not to be included in allowable cost . . . .

(b)(2) Charity allowances are reductions in charges made by the provider of services because of the indigence or medical indigence of the patient.

. . . .

(g) Charity allowances have no relationship to beneficiaries of the health insurance program and are not allowable costs.

42 C.F.R. § 405.420 (1982). This regulation, or a version of it, has been in effect since 1966. Plaintiff falls squarely within this regulation. Plaintiff argues, however, that the regulation is invalid because it exceeds the Secretary's statutory authority.

Plaintiff bases its argument on 42 U.S.C. § 1395x(v)(1)(A), which provides that the necessary costs of delivering services to Medicare beneficiaries shall not be borne by those not covered by Medicare. Plaintiff's argument on this issue is similar to its argument on the Hill-Burton issue: it asserts that, if the Secretary denies reimbursement for non-Hill-Burton charity care, non-Medicare patients will end up bearing part of the cost of the Medicare program, in contravention of the statute. Plaintiff again points to 42 C.F.R. § 405.451(b), which defines necessary costs as those which are "appropriate and helpful in maintaining the operation of patient-care facilities and activities," and argues that since charity care is necessary to maintain its tax-exempt status, and the tax-exempt status helps to maintain its operations, charity care is reimbursable as a necessary cost under Medicare.

Plaintiff cites no case law in support of this argument. The Secretary relies on *Indiana Hospital Association, Inc. v. Schweiker,* 544 F.Supp. 1167 (S.D.Ind.1982), which held that the exclusion of charity allowances from Medicare costs did not contravene 42 U.S.C. § 1395x(v)(1)(A) but rather effectuated its mandate that non-Medicare costs not be borne by the Medicare program. The court stated:

The Congress has said that costs attributable to non-Medicare patients are not to be borne by the Medicare program. All of the items excluded by 42 C.F.R. § 405.420(a) are just such costs or, more accurately, lack of revenue. The challenged regulation appears to be in complete harmony with both the letter and the spirit of the statute, and the decision of the [S]ecretary with respect thereto is correct.

*Indiana Hospital Association, supra,* 544 F.Supp. at 1187.

Neither the court nor the parties have uncovered any other case dealing with this issue. The court believes that the *Indiana Hospital* court's reasoning on this issue is correct. The Secretary has not exceeded her statutory authority, in promulgating the challenged regulation. The regulation is valid, and was correctly applied to this case. Plaintiff is not entitled to Medicare reimbursement for the costs of free medical care provided in addition to Hill-Burton free care.

## IV. CONCLUSION

The decision of the Secretary on both of the plaintiff's claims must be upheld. The Secretary's motion for summary judgment is granted, and the plaintiff's motion is denied.